**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

FILED
MAR 23 2015
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**Alexandria Division**

**Keith D. Goodman,**
**Plaintiff,**

**v.** **1:11cv79 (GBL/IDD)**

**Gene M. Johnson, et al.,**
**Defendants.**

MEMORANDUM OPINION

This Matter comes before the Court on cross motions for Summary Judgment. Keith D. Goodman, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that the defendants showed deliberate indifference to his serious medical needs by refusing to prescribe him contact lenses, rather than eyeglasses. Defendant Dr. Elton Brown filed a Motion for Summary Judgment on April 4, 2014, as well as a supporting memorandum and the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. 92, 93. Plaintiff filed a response on May 27, 2014. Dkt. 116. Defendant Dr. David Spruill filed a Motion for Summary Judgment on January 7, 2015, as well as a supporting memorandum and the notice required by Local Rule 7(K) and Roseboro. Dkt. 125, 126.[1] Plaintiff filed a response on February 27, 2015. Dkt. 146. Plaintiff also filed his own Motion for Summary Judgment on February 24, 2015. Dkt. 143. Defendant Spruill filed a reply to plaintiff's response. Dkt. 145. Both defendants filed responses to plaintiff's Motion for Summary Judgment. Dkt. 147, 148. For the reasons that follow, defendants' Motions will be

[1] Because service has not been accomplished on defendant Krym, he will be dismissed from the instant action. See Fed. R. Civ. P. 4(m). It also appears that service was never accomplished on Kim Runion, also a defendant originally before the Court. Accordingly, she will also be dismissed from this case, pursuant to Fed. R. Civ. P. 4(m).

granted and plaintiff's Motion will be denied.

## I.  Procedural History

Plaintiff filed his initial complaint on January 24, 2011, naming eighteen defendants, including supervisory officials at the Virginia Department of Corrections ("VDOC"); officials at Green Rock Correctional Center ("Green Rock"), Brunswick Correctional Center ("Brunswick"), and Greensville Correctional Center ("Greensville"); and Prison Health Services.  See, e.g., Compl. [Dkt. 1], at 7-8.  He stated that, for more than twenty years, he has been wearing contact lenses to correct his nearsightedness.  Id. at 8 ¶ 28.  Plaintiff relies on contact lenses, rather than eyeglasses, to correct his vision, as he experiences "regular headaches that occur solely as a result of using eyeglasses."  Id. at 8 ¶ 31.  Prior to 2009, VDOC doctors prescribed plaintiff contact lenses, rather than eyeglasses.  See id. at 9 ¶ 34; Plaintiff's Memorandum in Support of Opposition to Motion for Summary Judgment ("Pl.'s Mem.") [Dkt. 37], Exs. 8-12 (showing receipt of contact lenses through the medical prosthesis process at previous facilities).  However, starting in 2009, defendant Brown, an optometrist at Brunswick, defendant Krym, an optometrist at Green Rock, and defendant Spruill, an optometrist at Greensville, refused to prescribe contact lenses to plaintiff and only prescribed him eyeglasses, despite his complaints of headaches.  See Compl. at 9-10 ¶ 36.  Plaintiff asserts that this decision was motivated entirely by an erroneous reading of VDOC policy mandating that contact lenses "will be supplied when medically indicated."  See id. at 11 ¶ 41-12 ¶ 46.  He originally asserted that these actions violated his rights under the Eighth, Ninth, and Fourteenth Amendments, as well as the Americans with Disabilities Act ("ADA").

As directed by the Court, plaintiff filed an amended complaint against the same defendants on April 26, 2011.  Dkt. 7.  On May 24, 2011, the Court dismissed plaintiff's ADA claim, as well

as several defendants, including the three individual doctors named above, for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1). The Court found that plaintiff had not stated a claim for deliberate indifference against the doctors, as "[the defendants] all based their refusal to prescribe contact lenses [on] VDOC policy, which indicates that they were receptive to Goodman's complaints and were trying to treat his vision and headaches within the constraints of their working environments." Order (May 24, 2011) [Dkt. 8], at 6.

The Court granted the remaining defendants' Motion to Dismiss and Motion for Summary Judgment on October 19, 2012. Dkt. 52, 53. On appeal, the United States Court of Appeals for the Fourth Circuit vacated the Court's dismissal of defendants Brown, Krym, and Spruill. The court held:

> Here, [plaintiff] complains that each of his doctors has refused to adequately address his complaints that his eyeglasses cause him headaches, ostensibly due to their reliance on [VDOC policy] and the direction of their superiors. Because we find no support for the district court's conclusion that such reliance, if true, insulates Goodman's doctors from liability, we vacate the portion of the district court's order dismissing [plaintiff's] claims against Dr. Krym, Dr. Brown, and Dr. Spruill.[FN]
>
> [FN] By this disposition we make no determination regarding the underlying merit of [plaintiff's] claims. We simply conclude that Goodman's complaint raised allegations against his various doctors sufficient to survive preliminary review under 28 U.S.C. § 1915A(b)(1).

Goodman v. Johnson et al., No. 12-7990, slip op., at 5-6 (4th Cir. May 3, 2013). Dkt. 59. After entry of this Order, the Court reinstated defendants Brown, Spruill, and Krym.[2] Brown and Spruill have now filed Motions for Summary Judgment, arguing that they did not show deliberate indifference to plaintiff's serious medical needs.

---

[2] It appears that the case was never officially reopened after the Fourth Circuit's remand. The Clerk will be directed to reopen the case for the purpose of entering final judgment.

## II. Factual Background

At this stage of the litigation, the sole remaining defendants are Brown, who treated plaintiff at Brunswick between December 2008 and September 2009, and Spruill, who treated plaintiff at Greensville starting in March 2010.[3] See Dr. Brown's Memorandum in Support of Motion for Summary Judgment ("Brown's Mem.") [Dkt. 93], Att. 1 (Brown Decl.) ¶¶ 2-9; David Spruill's Memorandum in Support of Motion for Summary Judgment ("Spruill's Mem.") [Dkt. 126], Att. 5 (Spruill Decl.) ¶¶ 2-5; see also Plaintiff's Response to Defendant Brown's Motion for Summary Judgment ("Pl.'s Brown Resp.") [Dkt. 116], Ex. 25 (indicating a meeting between Brown and plaintiff as early as December 2008). It is undisputed that both Brown and Spruill individually diagnosed plaintiff "with myopia (Nearsightedness) in both eyes with good visual correction with eyeglasses." Spruill's Mem., at 1; see also Brown's Mem., at 2. Neither doctor saw any medical reason why plaintiff required contact lenses, and neither doctor knew of any reason why plaintiff's eyeglasses would cause him headaches. See Brown's Mem., Att. 1 ¶ 2; Spruill's Mem., Att. 5 ¶¶ 2, 8.

On January 29, 2009, plaintiff told Brown his eyeglasses caused him headaches. Plaintiff states that his headaches are "substantial," cause dizziness and blurry vision, and interfere with his daily activities. Am. Compl., at 8 ¶ 27. Brown informed plaintiff that he could not prescribe plaintiff contact lenses, due to the existence of a VDOC policy permitting the prescription of contact lenses only when medically necessary. See Brown's Mem., Att. 1, Ex. A, at unnumbered

[3] It is unclear when or whether Spruill stopped treating plaintiff. Spruill states that the last time he saw plaintiff was December 12, 2013. See Spruill's Mem., Att. 5 ¶ 5. However, plaintiff states that he saw Spruill from 2010 until "the present day." Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") [Dkt. 143], at 2 ¶ 2. Plaintiff was transferred to Haynesville Correctional Center ("Haynesville") on November 12, 2014. See Dkt. 122. Plaintiff states that he saw Spruill at Haynesville on December 10, 2014. See Plaintiff's Motion in Opposition to David Spruill's Motion for Summary Judgment ("Pl.'s Spruill Resp.") [Dkt. 146], at 3 ¶ 1.

page 2 (entry of Feb. 5, 2009).   On February 5, 2009, medical staff noted plaintiff's complaint about Brown's statement in his medical chart, and indicated that "there is no documentation in record of a medical need for contacts."   Id. at unnumbered page 3.   The nurse documenting this entry stated that plaintiff did not meet the criteria to be prescribed contact lenses pursuant to VDOC policy, and would be issued eyeglasses instead.   Id.   On February 13, 2009, medical staff received a request from plaintiff indicating that his eyeglasses caused him headaches.   Id. (entry of Feb. 13, 2009).   This request was referred to Brown, who followed up with plaintiff on February 27, 2009.   See id. at unnumbered pages 3-4.   Brown again informed plaintiff that he saw no medical need for contact lenses, and directed that eyeglasses be ordered for plaintiff. Brown's Mem., Att. 1 ¶ 4.

On April 3, 2009, plaintiff met with Brown, and informed him that he was suffering from headaches.   See id. ¶ 6.   Brown informed plaintiff that "[he] had excellent vision in both eyes with the correction of his eyeglasses, and there was no medical reason for his level of myopia, with only a minimal difference between the two eyes, to cause headaches with his prescribed eyeglasses."   Id.   Brown referred plaintiff's complaints of headaches to the head nurse at Brunswick.   Id.   On September 17, 2009, plaintiff was scheduled to see an ophthalmologist at Southampton Memorial Hospital "to diagnose his headaches and determine if there is a medical reason for contacts vs. eyeglasses as well as the cause for his headaches."   Brown's Mem., Att. 1, Ex. A., at unnumbered page 6 (entry of Sept. 17, 2009).   Due to his transfer to Greensville, plaintiff never attended this appointment.   See Memorandum in Support of Summary Judgment ("Summ. J. Mem.") [Dkt. 27], Ex. 4 (Schilling Aff.) ¶ 6.   It appears that plaintiff visited an ophthalmologist, Dr. Gupta, in July of 2011.   See Plaintiff's Affidavit ("Pl.'s Aff.") [Dkt. 35, 38] ¶ 15.   The result of this appointment is unclear from the record.   See Pl.'s Mem., at 9 ¶ 14

(explaining only that Dr. Gupta asked questions about plaintiff's headaches).

Plaintiff's medical records from Brunswick show that, in December 2008, Brown discussed plaintiff's request for contact lenses with Kim Runion, the Warden of Brunswick. On December 5, 2008, Brown indicated that he "[would] discuss inmate's request for [illegible] of contact lenses with Ms. Runion." Pl.'s Brown Resp., Ex. 25. On December 19, 2008, Brown noted that he "discuss[ed] contact issue with Ms. Runion." However, nothing in the record indicates the substance of these conversations, nor did Brown indicate that these conversations influenced his medical judgment in any way.

Plaintiff first saw Spruill on March 25, 2010. See Spruill's Mem., Att. 5 ¶ 2. Spruill also advised plaintiff that "contact lenses [were] not medically indicated." Spruill's Mem., Ex. A. Although Spruill offered to order eyeglasses for plaintiff, plaintiff declined. Id. Plaintiff was given the same information on September 30, 2010, and again declined to order eyeglasses. Id. Ex. B. Plaintiff agreed to order eyeglass on December 12, 2013. Id. Ex. D. Plaintiff asserts that Spruill stated that, had plaintiff not been in prison, he would have prescribed contacts to plaintiff, but could not due to VDOC policy. See Am. Compl., at 33 ¶ 169. Plaintiff also states that Spruill "refused to note plaintiff's complaints of headaches caused by the use of eyeglasses in plaintiff's chart . . . ." Id. at 40 ¶ 171.

Plaintiff asserts that both defendants had knowledge of his headaches and the reason for his headaches, and that their failure to prescribe contact lenses to treat his headaches constitutes deliberate indifference. He states that there is no "medically necessary" reason for contacts other than vision-correction, and that the defendants' insistence on a heightened standard of medical necessity is an erroneous interpretation of VDOC policy.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  The moving party bears the burden of proving that judgment as a matter of law is appropriate.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution.  Id. at 322.  Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are those which are material.  "[T]he substantive law will identify which facts are material.  Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.  An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must present some evidence, other than

its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." Id. at 586; see also Celotex, 477 U.S. at 325.

When both parties have filed a motion for summary judgment, a court must evaluate the merits of each motion individually and determine whether the moving party is entitled to judgment as a matter of law. See Philip Morris, Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997). In reviewing these motions, a court must draw all reasonable inferences against the party whose motion is being considered. See Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal citations omitted). The court in this situation is not required to grant summary judgment for one side or the other. See LewRon Television, Inc. v. D.H. Overmeyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968) ("We agree that, simply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other.").

## III. Analysis

Summary judgment is appropriate in favor of defendants Brown and Spruill because the evidence, viewed in the light most favorable to plaintiff, shows that they did not act with deliberate indifference to plaintiff's serious medical needs. To the extent that there are disputed issues of fact, these disputes are not material, and do not preclude the entry of summary judgment in favor of defendants. Summary judgment is not appropriate in favor of plaintiff, as the evidence, viewed in the light most favorable to defendants, does not establish deliberate indifference by the defendants.[4]

[4] Plaintiff also states that the defendants violated his Fourteenth and Ninth Amendment rights. As he has not provided any specific indication as to why he believes that his Due Process rights have been violated, his Fourteenth Amendment claim must be dismissed. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. This Amendment does not provide any specific cause of action, nor does it provide any substantive right to a certain degree of medical care. See, e.g., Griswold v. Connecticut, 381 U.S. 479, 492 (1965) (Goldberg,

A. Deliberate Indifference

*1. Legal Standard*

To prevail on a claim of deliberate indifference to serious medical needs, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must satisfy two distinct elements to obtain relief. First, he must provide evidence to show that he suffered from a sufficiently serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating medical treatment, or if a lay person would recognize the need for medical treatment. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)); see also Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Brown v. Dist. of Columbia, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (concluding that the "intense and often relentless pain" associated with untreated gallstones is sufficiently serious); but see Hall v. Holsmith, 340 F. App'x. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need).

Second, a plaintiff must show that the defendants acted with deliberate indifference to this serious medical need. To act with deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff

---

J., concurring) ("[T]he Ninth Amendment [does not constitute] an independent source of right protected from infringement by either the States or the Federal Government."). Accordingly, to the extent that plaintiff attempts to bring a Ninth Amendment claim, his allegations must be dismissed.

must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part by Farmer, 511 U.S. 825; see also Estelle, 429 U.S. at 106. In other words, a plaintiff must show that defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted). To act with deliberate indifference, a defendant must have actual knowledge of the potential risk of harm to an inmate; the mere fact that the defendant should have known of the risk is not sufficient to constitute deliberate indifference. See, e.g., Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it.").

*2. Application*

At this juncture, it is undisputed that both defendants diagnosed plaintiff with mild myopia. It is also undisputed that plaintiff complained to both defendants – and to other medical officials at Brunswick and Greensville – of headaches. Third, it is undisputed that plaintiff believes that his eyeglasses are the cause of his headaches, and that, were he to receive contact lenses, he would not suffer from headaches. Last, it is undisputed that neither Brown nor Spruill saw any medical evidence to indicate that plaintiff's eyeglasses caused his headaches, or that prescribing him contact lenses would alleviate his headaches.

Therefore, although the exact cause of plaintiff's headaches has not been determined, no doctor ever diagnosed plaintiff's headaches as being caused by his eyeglasses. Plaintiff was referred to an ophthalmologist at Southampton Memorial Hospital to determine the cause of his headaches, but did not attend this appointment due to his transfer to another facility. See Summ. J. Mem., Ex. 4 ¶ 6. In addition, although plaintiff has since seen Dr. Gupta, an ophthalmologist, it

does not appear that Dr. Gupta has definitively diagnosed the cause of plaintiff's headaches.   Pl.'s Aff. ¶ 15.   Thus, there has not been a diagnosed cause of plaintiff's headaches.   See Pl.'s Aff. ¶ 15.   Because there has been no diagnosed cause of plaintiff's headaches, the parties also dispute whether plaintiff's headaches constitute a serious medical need.   The parties' briefs reflect this dispute.   Plaintiff states that it is obvious to anyone that severe headaches constitute a serious medical need, and that the defendants' failure to provide contact lenses to alleviate his headaches constitutes deliberate indifference to this serious medical need.   See, e.g., Am. Compl, at 10 ¶ 35 ("All that is required by any doctor [to prescribe contacts] is a need for vision-correction."); Pl.'s Mot., at 4 ("A doctor must, at minimum, make some treatment efforts to remedy a serious medical need.   Instead, the evidence shows that Defendants completely disregarded, and failed to treat, Plaintiff's complaints of headaches and only prescribed eyeglasses. . . .") (internal citations omitted).   Defendants contend that it is not obvious that the specific medical need of "headaches caused by eyeglasses" is serious.   See, e.g., Spruill's Mem., at 7 ("No physician diagnosed Goodman's alleged headaches as being caused by wearing eyeglasses instead of contact lenses or mandating the treatment Goodman seeks, . . . nor would it be obvious to a lay person that what Goodman has alleged regarding headaches necessitated the prescription of contact lenses.").

Courts have come to various conclusions about whether a visual impairment such as plaintiff's constitutes a serious medical need.   Compare, e.g., George v. Jones, No. C06-2800 CW (PR), 2008 WL 859439, at *9 (N.D. Cal. Mar. 28, 2008) ("Neither Plaintiff's vision impairment nor his headaches constitute a serious medical need under the Eighth Amendment."), with, e.g., Glass v. Orleans Parish Criminal Sheriff, No Civ.A. 04-3353, 2005 WL 1501019, at *3 (E.D. La. June 22, 2005) ("It is clear that, in some circumstances, a vision impairment may be so severe as to constitute a serious medical need.") (emphasis in original) (internal citation omitted).

Accordingly, whether the medical need in this case is framed as defendants' failure to treat plaintiff's headaches, or defendants' failure to specifically treat headaches caused by eyeglasses, it is unclear whether the need is "serious."

This uncertainty is irrelevant to the summary judgment analysis, however, because it is clear that, based on the defendants' medical judgment, they did not believe that plaintiff suffered from a serious medical need. Specifically, they, based on their medical experience, did not believe that plaintiff's headaches were caused by his eyeglasses. Both defendants assert that they did not see any medically necessary reason to prescribe plaintiff with contact lenses, rather than glasses, and both defendants assert that, based on their medical judgment, they did not believe that plaintiff's headaches were caused by his eyeglasses.[5] As this conclusion was based on the defendants' medical training and expertise, the Court will respect the conclusion. See, e.g., Neal v. Stanford, No. 7:10cv163, 2010 WL 1727464, at *2 (W.D. Va. Apr. 28, 2010) (internal citations omitted) ("The nurse, based on her medical expertise or on consultation with someone else in the medical unit, decided that missing one dose did not present any significant risk to [inmate's] health. The court cannot second guess such medical judgments."). Plaintiff contends that, as he informed both defendants of the fact that eyeglasses caused him headaches, the defendants "did believe that eyeglasses were causing Plaintiff to have headaches." Pl.'s Spruill Resp., at 4 ¶ 3; see also Pl.'s Brown Resp., at 3 ¶ 2. Plaintiff states, relying on his own affidavit and that of his father (an obstetrician), that, because a doctor should rely primarily on his patient's subjective complaints of pain, the fact that he stated that he was in pain was sufficient for the doctors to know

[5] In support, defendant Spruill points out that "[plaintiff] has been examined by two other Optometrists and one Ophthalmologist from October 2009-December 12, 2013. All concluded that there was no medical indication for contact lenses and all recommended eyeglasses." Spruill's Mem., Att. 5 ¶ 7. Although defendant is correct that plaintiff was seen by an ophthalmologist, Dr. Gupta, during this time, the record does not reflect that Dr. Gupta ever came to a definite conclusion about the cause of plaintiff's headaches.

that his eyeglasses caused his headaches.   See Pl.'s Spruill Resp., at 4 ¶ 3; see also id. Ex. 30 ¶¶ 1-2; Ex. 31 ¶ 14.   However, as plaintiff has no medical training, the Court will not consider his statement of what the defendants should have believed as a statement of fact relevant to the summary judgment analysis.   See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Because the defendants, based on their own medical expertise and training, did not believe that plaintiff's headaches were caused by his eyeglasses or that contact lenses would alleviate his headaches, it is clear that the defendants did not show deliberate indifference to plaintiff's medical needs.   Plaintiff faults the defendants for not providing any treatment for his headaches. However, the defendants, exercising their medical judgment, did not believe that they, as optometrists, could remedy plaintiff's headaches.   They did not believe that prescribing plaintiff with contact lenses would alleviate his headaches, and they thus had no reason to take any additional action to attempt to do so.   Medical officials are deliberately indifferent only if they "actually . . . recognize[] that [their] actions [are] insufficient" to protect plaintiff from a risk of harm.   Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (citing Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001)).   Here, defendants reasonably believed, first, that plaintiff was not in danger of harm due to their actions, and second, that their actions would have no effect on any harm he already suffered.   Although plaintiff disagrees with the defendants' conclusions, this disagreement does not amount to deliberate indifference.   Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (internal citations omitted).   Plaintiff has presented no facts to establish that the defendants knew that their medical treatment caused or exacerbated a serious medical need,

and that they deliberately ignored this need, other than his own dissatisfaction with the preferred

course of treatment.   To defeat a motion for summary judgment, plaintiff must offer more than

"wholly speculative assertions," Ross, 759 F.2d at 364, as to the facts at issue.

Plaintiff states that, even if the defendants did not know the exact cause of his headaches,

his "complaints [were] reason enough to create a medical obligation by [defendants] to act to

remedy those medical complaints.   It does not matter if [they] can see an objective reason for

Plaintiff's complaints [sic]."   Pl.'s Brown Resp., at 7 ¶ 9.   He thus attempts to argue that the

defendants had an unconditional duty to remedy all of plaintiff's medical problems, regardless of

their medical judgment, and that their failure to do so violates the Eighth Amendment.   Plaintiff's

argument misstates the contours of the deliberate indifference test, however.   The test for

deliberate indifference requires both that plaintiff suffer from an objectively serious need and that

medical officials, faced with actual knowledge of that serious medical need, deliberately ignore

that need.   The test encompasses what medical professionals actually know, based on their

medical training and expertise.   Cf. Estelle, 492 U.S. at 107 (holding that a medical decision not to

perform a certain procedure is a "classic example of a matter for medical judgment," and does not

constitute deliberate indifference); Snipes v. DeTella, 95 F.3d 586, 590-91 (7th Cir. 1996)

(holding that questions of the appropriate degree of medical judgment appropriate to a particular

situation is a matter of tort, rather than constitutional, law).   While medical professionals should

listen to their patients, they are also entitled to exercise their own professional judgment when

making medical decisions.   A doctor's failure to treat every single instance of pain does not

violate the Eighth Amendment.   See, e.g., Snipes, 95 F.3d at 592 ("To say the Eighth Amendment

requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment

would be absurd.   It would also be absurd to say . . . that the Constitution requires prison doctors

to administer the least painful treatment.").

B. VDOC Policy

Plaintiff also asserts that the defendants' decision not to prescribe him contact lenses was actually motivated entirely by VDOC policy, rather than their own medical opinions. He specifically points to a conversation in which defendant Brown told him that, absent the policy, he would prescribe contact lenses to plaintiff. See, e.g., Am. Compl., at 25 ¶¶ 120-21; Pl.'s Brown Resp., at 6 ¶ 6. Plaintiff asserts he had a similar conversation with defendant Spruill. See Am. Compl., at 33 ¶ 169-34 ¶ 171; Pl.'s Spruill Resp., at 5-6 ¶ 5. Plaintiff also points to the conversations between Brown and Warden Runion regarding plaintiff's contact lenses as support for his contention; he argues that Brown would not have met with Runion unless he believed that contacts were medically necessary, and that Brown's decision was therefore influenced by Runion. See Pl.'s Resp., at 4 ¶ 2; 6 ¶ 6. Last, plaintiff argues that the defendants erroneously conflated the words "medically indicated" in VDOC policy with "medically necessary," and that there is no reason, other than VDOC policy, to look to anything other than the fact that contacts are "medically indicated" for vision correction before prescribing them. See, e.g., Am. Compl., at 9 ¶ 32-11 ¶ 38.

Plaintiff's conclusory arguments are not supported in the record, however. As an initial matter, plaintiff has not provided any evidence to support his claim that VDOC has erroneously interpreted "medically indicated" and "medically necessary" in the same manner. VDOC, as an agency, is free to interpret its own policy in a reasonable manner. See, e.g., Christiansen v. Harris County, 529 U.S. 576, 586 (2006) (internal citations omitted) (holding that agency interpretations of non-binding regulations are entitled to deference to the degree that the interpretation "has the power to persuade"). As plaintiff has not explained why he believes that the current interpretation

is unreasonable, and as nothing in the record shows that this interpretation is unreasonable, this Court will not overturn VDOC's interpretation of the policy.   In addition, the mere fact that Brown and Spruill may have prescribed contacts to plaintiff absent the VDOC policy mandating the provision of contacts only in medically necessary situations, does not imply that their decisions were based solely on that policy.   Indeed, as plaintiff concedes, any individual can walk into an optometrist in Virginia and receive contact lenses without any showing other than that they are necessary for vision correction.   See Pl.'s Brown Resp., at 24 n.84; Pl.'s Spruill Resp., at 23 n.84. As a VDOC inmate, however, plaintiff does not have the same liberties.   Prisoners, by nature of their lawful confinement, do not have the same degree of rights and freedoms as non-incarcerated individuals.   See, e.g., Turner v. Safley, 482 U.S. 78, 95 (1987).   Although plaintiff is entitled to adequate medical care, he is not entitled to the medical care of his choice.   See, e.g., De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) ("[A] prisoner does not enjoy a constitutional right to the treatment of his or her choice . . . ."); Calvert v. Sharp, 748 F.2d 861, 862 n.1 (4th Cir. 1984) (citing Estelle, 429 U.S. at 106), cert. denied, 471 U.S. 1132 (1985), abrogated on other grounds by West v. Atkins, 487 U.S. 42 (1988) (finding that complaints about the quality of medical treatment do not implicate the Eighth Amendment).   Plaintiff is subject to VDOC policy mandating that contact lenses only be prescribed when medically necessary, even though a private individual is not subject to such a policy.   Thus, when the defendants, in the exercise of their medical judgment, concluded that contacts were not medically necessary, they had no duty to prescribe them to plaintiff.   This limitation on plaintiff's ability to receive contact lenses does not, as plaintiff contends, show that the defendants were deliberately indifferent to his needs.

In contrast, the fact that the defendants followed VDOC policy in their treatment of plaintiff shows the reasonableness of the policy.   Plaintiff's argument, taken to its logical

conclusion, contains no limiting principle. Plaintiff argues that, because he subjectively believed that eyeglasses caused him headaches, the defendants had an affirmative duty to provide him with contact lenses. Thus, he argues that his subjective perception of pain entitles him to the specific remedy of his choice. Were VDOC medical providers such as the defendants to allow such a subjective standard to determine the course of their medical treatment, they would be required to treat every instance of pain in the exact manner chosen by the inmate, regardless of the medical reasons for the pain. Such expansive treatment is not required by the Eighth Amendment. The VDOC policy, by mandating the prescription of contact lenses only when medically necessary, ensures that medical providers can exercise their professional medical judgment and provide effective and efficient healthcare to inmates.

Accordingly, the evidence is clear that, regardless of the actual cause of plaintiff's headaches, the defendants did not, in the exercise of their professional judgment, believe that they could provide treatment which would remedy his headaches. The defendants provided adequate treatment for myopia – the condition with which he was diagnosed – in the form of eyeglasses. As they did not believe that contacts were medically necessary, they had no reason, under VDOC policy, to prescribe contact lenses. This treatment does not evidence deliberate indifference to plaintiff's serious medical needs.

C. Qualified Immunity

Defendants argue that, even if they violated plaintiff's Eighth Amendment rights, they are entitled to qualified immunity to the extent that plaintiff seeks damages from them in their individual capacities.[6] Under the qualified immunity doctrine, defendants performing

[6] In their official capacities, defendants are absolutely immune from suit. A suit against state officials in their official capacity is a suit against the state, and is therefore barred by the Eleventh Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). As state officials, the

discretionary functions and sued in their individual capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   A court considering a qualified immunity defense must make two inquiries: (1) whether the facts, when viewed in the light most favorable to the plaintiff, establish that the defendants committed a constitutional violation; and (2) whether the right violated was clearly established at the time of the defendants' conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001).   A court does not need to address these inquiries in a particular order, and defendants are entitled to qualified immunity if the court resolves either element in favor of defendants. Pearson v. Callahan, 555 U.S. 223, 225 (2009).

The threshold inquiry for determining whether a right was clearly established at the time of the defendants' conduct is whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).   Specifically, if individuals could reasonably disagree about whether a particular action was unconstitutional, defendants are entitled to qualified immunity. See, e.g., Malley v. Briggs, 475 U.S. 335, 341 (1986).   Here, the evidence shows that the defendants are clearly entitled to qualified immunity.

The defendants treated plaintiff in accordance with their sound medical judgment, providing him with eyeglasses for his myopia and routine eye examinations.   Although plaintiff is correct that he has a clear constitutional right to receive adequate medical treatment that does not cause him unnecessary pain, he does not, as a prisoner, have an unqualified right to the medical treatment of his choice. See Hudson v. McMillian, 503 U.S. 1, 9 (1992).   Accordingly, plaintiff

---

defendants therefore cannot be sued in their official capacities.

does not have a clearly established right to specifically receive contact lenses rather than eyeglasses. Thus, as stated above, it is clear that the defendants, even if they had violated plaintiff's Eighth Amendment rights, did not violate any clearly established right of which they had notice. The defendants are therefore entitled to qualified immunity.

D. State Law Claims

Plaintiff also asserts that the defendants committed state torts of medical malpractice and intentional infliction of emotional distress. However, as the Court is granting summary judgment in favor of the defendants on plaintiff's federal claims, there is no need to exercise supplemental jurisdiction over plaintiff's state-law claims. This Court can only exercise supplemental jurisdiction over state law claims when it has original jurisdiction over the original lawsuit. See 28 U.S.C. § 1367(a). Because the entry of summary judgment in favor of defendants resolves all federal questions in plaintiff's complaint, the Court no longer has federal question jurisdiction over plaintiff's case pursuant to 28 U.S.C. § 1331.[7] Accordingly, this Court cannot exercise supplemental jurisdiction over plaintiff's state-law claims.

## IV. Conclusion

For the above-stated reasons, defendants' Motions for Summary Judgment will be granted, and plaintiff's Motion for Summary Judgment will be denied. An appropriate Judgment and Order shall issue.

Entered this 23rd day of March 2015.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia

[7] Plaintiff has not alleged any facts that would support the exercise of diversity jurisdiction under 28 U.S.C. § 1332, as all parties are citizens of Virginia.